**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

JACOB C. BRIER, *also known as*
Jacob Brier,

      Plaintiff,

        v.                                      CAUSE NO. 3:25-cv-00398-ALT

ARAMARK CORRECTIONAL
SERVICES, *Central Office, et al.,*

      Defendants.

## OPINION AND ORDER

Jacob C. Brier, a prisoner without a lawyer, is advancing Eighth Amendment

claims in this case against: (1) "Ms. Moody and the Aramark Supervisor in charge at

Westville Correctional Facility from February 2024 through April 2025, in their

individual capacities for compensatory and punitive damages for deliberate

indifference to Brier's right to nutritionally adequate food from February 2024, through

April 2025 at the Westville Control Unit"; and (2) "Aramark Corporation in its official

capacity for monetary damages for a policy of providing rotten and moldy food,

resulting in Brier becoming ill repeatedly and receiving inadequate nutrition from

February 2024 through April 2025[.]" (ECF 13 at 4). On February 11, 2026, Defendants

filed a motion for summary judgment, arguing Brier did not exhaust his available

administrative remedies before filing this lawsuit. (ECF 30). Brier filed a response, and

Defendants filed a reply. (ECF 36-38, 43). The motion for summary judgment is now

ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Nevertheless, "[f]ailure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citation omitted).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative

rules require." *Id*. (citation omitted). But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement … and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citations omitted).

Defendants provide an affidavit from the Grievance Specialist at Westville Correctional Facility, Brier's grievance records, and a copy of the Offender Grievance Process, which show the following facts: The Offender Grievance Process requires an inmate to complete three steps before filing a lawsuit: (1) a formal grievance, (2) a Level I appeal to the warden, and (3) a Level II appeal to the Department Grievance Manager. (ECF 33-1 at 7). Once an inmate submits a formal grievance, the Grievance Specialist "must either return an unacceptable form or provide a receipt for an accepted form within ten (10) business days of receipt." (*Id.* at 13). If an offender does not receive either a rejected form or a receipt from the Offender Grievance Specialist within ten (10) business days of receipt, "the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days." *Id.* Here, the Grievance Specialist attests that she "reviewed Mr. Brier's grievance

3

file and was unable to find any evidence that he submitted any grievances related to his allegations that he was served food that was spoiled or moldy during his time at Westville." (*Id.* at 3).

In his response, Brier argues his administrative remedies were unavailable because he submitted a grievance related to his claim that he was served spoiled food and followed up by submitting a written notification to the Grievance Specialist, but he never received any response from the grievance office to his grievance or his subsequent written notification. Specifically, Brier attests and provides evidence he submitted a grievance through his mail bag on November 20, 2024, complaining that he became ill after he was intentionally served spoiled taco meat ("November 20 grievance"). (ECF 36-1 at 2; ECF 36-2 at 6). Two weeks later, Brier submitted a second grievance notifying the Grievance Specialist that he had not received a response to his November 20 grievance. (ECF 36-2 at 7). Brier then sent a written "Grievance Notice" to the Grievance Specialist informing her that he had not received any receipt or response to his November 20 grievance. (ECF 36-1 at 2; ECF 36-2 at 8). Brier attests he never received any response to his November 20 grievance or subsequent written notice. (ECF 36-1 at 2).

Brier has provided evidence he submitted a relevant grievance, never received any receipt or response from the grievance office, and followed up by submitting a written notification to the Grievance Specialist. At that point, the Grievance Specialist was required to "investigate the matter and respond to the offender's notification

4

within ten (10) business days)." (ECF 33-1 at 13). The Grievance Specialist did not do so, which left Brier without any further available remedy to exhaust.

In their reply, Defendants argue Brier did not actually submit his November 20 grievance and subsequent written "Grievance Notice" to the grievance office, noting neither document is stamped as received and the Grievance Specialist has no record of these documents in Brier's grievance file. (ECF 43 at 3-4). Brier attests he submitted both of these documents to the grievance office via his mailbag. (ECF 36-1 at 2). This creates a genuine dispute regarding whether Brier in fact submitted his November 20 grievance and subsequent "Grievance Notice" to the grievance office via his mailbag. If Brier *did* submit these two documents to the grievance office via his mailbag, then the Grievance Specialist made Brier's administrative remedies unavailable by failing to respond to these documents. If Brier did *not* submit these two documents to the grievance office via his mailbag, Brier had available remedies he did not exhaust before filing this lawsuit. Resolving this dispute will require a hearing as explained in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).[1] However, the Court will not schedule such a hearing unless Defendants file a motion requesting it.

For these reasons, Defendants' motion for summary judgment (ECF 30) is **DENIED**. Defendants are **CAUTIONED** that, if a *Pavey* hearing is not requested by

---

[1] *Pavey* was recently abrogated in part by *Perttu v. Richards*, 650 U.S. 460 (2025), which held that parties are entitled to a jury trial on a Prison Litigation Reform Act exhaustion issue when the issue is intertwined with the merits of a claim. *Perttu* is not applicable here, as the exhaustion issue identified here—whether Brier submitted his grievance and subsequent "Grievance Notice" to the grievance office via his mailbag—is not intertwined with the merits of Brier's claims against Defendants.

**June 30, 2026**, the affirmative defense of exhaustion of administrative remedies will be waived.

SO ORDERED.

Entered this 8th day of June 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge